IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID GARCIA,

    Plaintiff,

v.                                                                                           CIV 20-0097 KBM

ANDREW M. SAUL,
Commissioner of Social
Security Administration,

    Defendant.

## ORDER DENYING ATTORNEY FEES UNDER EAJA

THIS MATTER is before the Court on Plaintiff's Motion for Attorney Fees Pursuant to Equal Access to Justice Act ("EAJA"), with Supporting Memorandum (*Doc. 24*), filed on March 1, 2021. The Commissioner opposes an award of EAJA fees and insists that the Social Security Administration's position was substantially justified, both in the underlying administrative proceedings and when opposing Plaintiff's motion to remand in this Court. *Doc. 25*. Having reviewed the briefing, the record, and the relevant law, the Court denies Plaintiff's motion for EAJA fees.

In his motion to remand, Plaintiff sought reversal of the Agency's denial of his application for social security benefits on the grounds that the ALJ: (1) failed to properly consider the opinions of Plaintiff's neuropsychologist; (2) failed to include any adaptive functioning limitations in the RFC; (3) made an improper inference that his diabetes was controlled by oral medications; (4) failed to consider the reasons Plaintiff did not have surgery; (5) failed to resolve a conflict between the vocational expert's testimony and

the Dictionary of Occupational Titles; and (6) failed to adequately address limitations caused by Plaintiff's sleep apnea and insomnia. *Doc. 15* at 20-24. The Court found in Plaintiff's favor on his second and fourth claims of error and in the Commissioner's favor on the remaining claims, save his fifth claim of error, which the Court declined to address as the claim might be affected by the ALJ's treatment of the case on remand. *See Doc. 22* at 6, 31.

In his present motion, Plaintiff seeks attorney fees pursuant to EAJA. *Doc 24*. "Under EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 241(d)(1)(A)). The parties here disagree on the second factor: whether the government's position was substantially justified. In assessing substantial justification, the Court considers both the Commissioner's position in this federal civil case as well as the Social Security Administration's actions at the administrative level. 28 U.S.C. § 2412(d)(2)(D).

"The test for substantial justification in this circuit is one of reasonableness in law and fact." *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir 1995) (citing *Gutierrez v. Sullivan*, 953 F.2d 579, 585 (10th Cir. 1992)). "[T]he government's position can be justified even though it is not correct." *Hackett*, 475 F.3d at 1172 (quotation marks and quotation omitted). "The government's success or failure on the merits at each level may be evidence of whether its position was substantially justified, but that success or failure alone is not determinative of the issue." *Hadden v. Bowen*, 851 F.2d 1266, 1267

(10th Cir. 1988) (citations omitted). The Commissioner bears the burden to establish that the government's position was substantially justified. *Hackett*, 475 F.3d at 1172.

### I. The government's position concerning Plaintiff's moderate limitations in adaptive functioning was substantially justified.

In granting Plaintiff's motion to remand, this Court determined that the ALJ's RFC assessment failed to account for Plaintiff's moderate limitations in adaptive functioning. *Doc. 22* at 9. Now, in response to Plaintiff's motion for EAJA fees, the Commissioner insists that the government was substantially justified in its earlier position that the ALJ's RFC assessment adequately accounted for those limitations. *Doc. 25* at 2-3.

At the administrative level, the ALJ assessed an RFC for "simple, routine tasks, simple work-related decisions, maintaining attention and concentration for two-hour segments, and occasional interactions with others including supervisors, co-workers, and the general public." *See* Administrative Record ("AR") at 22. In reaching this RFC, the ALJ gave great weight to the opinions of state agency psychological consultants Mark McGaughey, Ph.D. and Joan Holloway, Ph.D. AR at 26. Drs. McGaughey and Holloway reviewed the record evidence and completed Mental Residual Functional Capacity Assessment ("MRFCA") forms. *See* AR at 117-19; 141-44. In Section I of the forms, the psychological consultants indicated, among other things, that Plaintiff had moderate limitations in his ability to respond appropriately to changes in the work setting. AR at 118, 143. At Section III, they opined that Plaintiff could perform unskilled work. AR 119, 143. The ALJ purported to consider the findings in both Section I and Section III of the MRFCA forms. *See* AR at 26. However, Plaintiff maintained on appeal that the ALJ failed to explain why he rejected the consultants' Section I opinion that he was moderately limited in his ability to respond to changes in the work setting. *Doc. 15*

3

at 22). The Commissioner countered, relying upon *Carver v. Colvin*, 600 F. App'x 616 (10th Cir. 2015) and arguing that the ALJ and reviewing court should consider the Section III narrative, rather than the Section I findings, in assessing the RFC. *Doc. 17* at 10. In support, the Commissioner pointed to the Program Operations Manual Systems ("POMS") § DI 24510.060, which provides that "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation and does not constitute the RFC assessment." *Doc. 17* at 10 (quoting POMS § DI 24510.060). Additionally, the Commissioner insisted that the ALJ's RFC assessment did not differ from the Section III conclusions of Drs. McGaughey and Holloway. *Docs. 15* at 21-22; *20* at 7.

      The Court ultimately disagreed with the Commissioner's position and granted Plaintiff's motion to remand as to his second claim. In an effort to explain the import of Section I findings to its analysis, the Court outlined the administrative process underlying MRFCA forms. *Doc. 22* at 11. The Court explained that when a disability case comes before an ALJ, "*all* of the findings on the MRFCA form constitute nonexamining opinions about the disability claim, not merely those opinions contained within Section III." *Id.* at 12 (citing POMS § DI 24515.007(1)(b)). Additionally, the Court observed that "the POMS require some description of the 'degree and extent' of any Section I limitation in the Section III narrative." *Id.* at 13 (citing *Carver*, 600 F. App'x at 619; POMS DI § 24510.063.B.2). The Court reasoned that "the POM's distinction [between Section I and III] . . . is aimed at guiding the agency consultants in making their disability determinations at the initial and reconsideration level [and] does not

4

dictate how the ALJ should weigh the consultants' findings when assessing the RFC." *Id.* (citing *Silva v Colvin*, 203 F. Supp. 3d 1153, 1159-60 (D.N.M. 2016)).

At the same time, the Court acknowledged an apparent inconsistency in the Tenth Circuit's treatment of Section I findings. *See id.* at 11. That is, although the Tenth Circuit has described Section I as a "mere worksheet," which does not constitute the RFC assessment, it has also cautioned that ALJs and reviewing courts should not "turn a blind eye" to moderate limitations in Section I. *Id.* (citing *Carver*, 600 F. App'x at 619). Further, while "the Tenth Circuit has acknowledged the [POM's] distinction between Section I and Section III of the MRFCA," it has also considered, in numerous cases, whether an ALJ's RFC adequately accounted for all Section I findings. *Id.* at 12 (citing *Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. 2016); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015); *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014)).

Relying upon the Tenth Circuit's rationale in *Carver*, the Court explained that an MRFCA cannot be considered substantial evidence in support of an ALJ's RFC finding if its Section III narrative fails to describe the effect that each Section I moderate limitation has on the claimant's functional ability. *Id.* at 13 (citing *Carver*, 600 F. App'x at 619). For the Court, the foundational question was whether the psychological consultants' Section III narratives adequately encapsulated the moderate adaption limitations they found in Section I. *See id*. Because the Court found that the Section I findings were *not* encapsulated in the Section III narratives, it followed that the Section III narratives could not provide substantial evidence for the ALJ's RFC. *See id*. at 18

5

The Court acknowledged that the ALJ at least purported to consider both the Section I and Section III findings, but it nevertheless determined that the RFC assessment failed to adequately account for the Section I moderate limitations in adaptive functioning. *See id*. In short, the RFC did not include explicit limitations in adaptive functioning, nor did the ALJ explain the degree or extent of Plaintiff's adaption limitation. *Id.* at 14-15. The Court also observed that the ALJ himself explicitly found moderate adaptive functioning limitations at Step Three of his sequential evaluation but failed to include them in the RFC. *Id.* at 9-10 (citing AR at 22).

In response to Plaintiff's motion for EAJA fees, the Commissioner maintains that it is significant that "the ALJ limited Plaintiff to only simple and *routine* tasks." *Doc. 25* at 4. The Commissioner references the dictionary definition of "routine" and asserts that "[a] reasonable mind could believe that work involving only commonplace and repetitive tasks would require *less* changes in the work setting – and as such, account[ed] for consultants' finding of moderate limitation in responding appropriately to changes in the work setting." *Id.* at 4-5. But Plaintiff insists that the Commissioner's argument has "no support in case law." *Doc. 26* at 2. Further, Plaintiff points to the Administration's regulations, which offer the following definition for adapting or managing oneself:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

*Id.* (quoting 20 C.F.R. pt. 404, Subpt. P, App. 1, §§12.00(E)(4)).

Notably, the Commissioner's argument that limiting Plaintiff to "routine" tasks accounted for his moderate adaptive functioning limitations is a new one. The Commissioner did not make this specific argument in prior briefing before the Court. Nor has the Commissioner offered legal authority for his assertion that limiting a claimant to "routine tasks" accounts for moderate limitation in adaptive functioning. Thus, the Court declines to find the Commissioner's position substantially justified on this basis.

The Commissioner's second argument requires more careful consideration. The Commissioner maintains that "he had a reasonable basis for believing that the ALJ had not turned a blind eye to the Section I limitations and that the RFC adequately accounted for those limitations." *Doc. 25* at 4. In this regard, the Commissioner emphasizes that the Tenth Circuit in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) "found no error under factual circumstances similar to those here." *Doc. 25* at 5.

In *Smith*, the state agency consultant found, in Section I of an MRFCA form, moderate limitations in a number of areas, including the ability to respond appropriately in the workplace. 821 F.3d at 1268-69. At Section III, the Agency "applied these assessments, concluding that [the claimant] could (1) engage in work that was limited in complexity; and (2) manage social interactions that were not frequent or prolonged." *Id*. at 1268. The ALJ's RFC, in turn, limited the claimant to work involving only simple, repetitive, and routine tasks that did not require face-to-face contact with the public. *Id*. at 1269. On appeal, the claimant maintained that the RFC did not account for the moderate Section I limitations, but the Tenth Circuit disagreed. *Id*. at 1268. The Tenth Circuit was satisfied that the ALJ incorporated the Section I limitations "by stating how the claimant was limited in the ability to perform work-related activities." *Id*. at 1269.

The court reasoned that an ALJ can at times adequately account for moderate limitations by limiting a claimant to particular types of work activity. *Id*. (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

According to the Commissioner, *Smith* illustrates that "the Tenth Circuit has issued divergent decisions on this highly fact-dependent issue." Doc. 25 at 6. This Court agrees that the Tenth Circuit's guidance has at times appeared inconsistent on this issue. Not surprisingly, the judges in this District have also diverged in their application of *Smith* and in their consideration of Section I limitations. For instance, Judge Khalsa, relying upon *Smith*, left open the possibility that an ALJ may account for a claimant's moderately impaired ability to respond appropriately to workplace changes by limiting a claimant to simple and detailed, but not complex, tasks. *See Sherman v. Berryhill*, No. No. 18-cv-0439 KK, 2019 WL 2450919, at *13 (D.N.M. June 12, 2019). Judge Vidmar acknowledged that "[i]f read in a vacuum" *Smith* could be interpreted to hold that ALJs are permitted to rely on Section III findings without explaining why they have not also relied on Section I findings. *Silva*, 203 F. Supp. 3d 1153. But as Judge Robbenhaar observed, judges in this District "have [also] declined to follow *Smith* on the grounds that it is inconsistent with *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) and *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007) and that one panel of the circuit court cannot overrule another. *Garza v. Saul*, No. 19cv0699 JFR, 2020 WL 5518837, at *12 n.20 (D.N.M. Sept. 14, 2020) (citing *Silva*, 203 F. Supp. 3d 1153; *Cordova v. Berryhill*, Civ No. 17-611 SMV, 2018 WL 2138657, at *7 (D.N.M. May 9, 2018); *Jones v. Berryhill*, Civ. No. 15-842, LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017)). Finally, in the context of motions for EAJA fees, Judges Vidmar and Garza have determined that

the Commissioner was not substantially justified in its position that an ALJ could rely on only Section III findings, or in arguing that an RFC limitation to unskilled work accounted for specific Section I limitations. *See*, *e.g.*, *Guinn v. Berryhill*, No. 16cv0689 SMV, 2018 WL 626247, at *2-4 (D.N.M. Jan. 30, 2018); *Gabaldon v. Berryhill*, No. 16cv769 CG, 2017 WL 3530382, at *3 (D.N.M. Aug. 16, 2017).

This Court ultimately sided with Plaintiff, determining that the ALJ's RFC assessment failed to adequately account for Plaintiff's moderate limitations in adaptive functioning and that the ALJ failed to explain why he rejected the moderate adaption limitations opined by the psychological consultants in Section I. This is not to say that the Court's resolution of this issue was entirely clear cut, however. As the Court acknowledged, there is an apparent inconsistency in the Tenth Circuit's treatment of Section I findings. *See Doc. 22* at 11. Significantly, for purposes of Plaintiff's present motion, "[w]hen an area of law is 'unclear or in flux, it is more likely that the government's position will be substantially justified.'" *Cherry v. Barnhart*, 125 F. App'x 913, 916 (10th Cir. 2005) (quoting *Martinez v. Sec'y of Heath and Hum. Servs.*, 815 F.2d 1381, 1383 (10th Cir. 1987)).

Because there is a varied treatment of *Smith* in this District and a lack of clarity offered by the Tenth Circuit as to the proper application of *Smith* when a consultant's Section III findings do not obviously encompass Section I limitations, the Court finds that the government was substantially justified in its arguments before this Court. Moreover, because the ALJ at least *purported* to have considered both the Section I and Section III findings of the psychological consultants, the Court is unwilling to say that the Commissioner lacked a reasonable basis for arguing that the ALJ had not turned a blind

eye to Section I limitations. For these reasons, the Court will deny Plaintiff's motion on this issue.

**II.     The government's position as to Plaintiff's right shoulder condition was substantially justified.**

Next, the Commissioner insists that he was equally justified in arguing that the ALJ's assessment of Plaintiff's right shoulder condition was adequate and proper. *Doc. 25* at 8. In its Memorandum Opinion and Order, the Court determined that the ALJ committed reversible error when he failed to consider whether there was a justifiable excuse for Plaintiff's failure to undergo right shoulder surgery. *Doc. 22* at 21-22. As the Court noted, the ALJ attributed Plaintiff's failure to obtain surgical intervention to his failure to "follow through" with the surgery recommended by his health care providers. *Id.* at 27 (citing AR at 26).

First, the Court outlined testimony from Plaintiff in which he explained that his severe shoulder pain was treated with painkillers and, for a time, with cortisone shots. *Id*. at 21 (citing AR at 65-66). According to Plaintiff, his providers would no longer administer cortisone shots once his weight increased and his A1c levels "started getting out of control." *Id*. at 22 (citing AR at 66). The Court highlighted Plaintiff's testimony that his primary care physician, Jeffrey Thomas, M.D., would not clear him for right shoulder surgery because his A1c level was at 14. *Id*. at 31 (citing AR at 78-79).

Second, the Court observed that a record dated January 2, 2017, indicated that "Dr. Thomas [would] not allow any kind of surgery due to the fact that [Plaintiff was] not in good health to heal properly to recover." *Id*. at 24 (quoting AR at 665). That same record also explained that Dr. Thomas would "no longer give cortisone shots to help with the pain in the shoulders because it greatly increase[d] [Plaintiff's] sugar levels." *Id.*

10

(quoting AR at 665). Finally, the record indicated that Dr. Thomas would instead "only prescribe Ibuprofen 600 mg 3 x a day for the pain for [Plaintiff's] torn rotator cuffs." *Id*. (quoting AR at 665).

Third, the Court considered Dr. Thomas' February 2017 "pre-op clearance" records, which indicated that outstanding items remained before Dr. Thomas would issue a "final clearance" for Plaintiff's contemplated shoulder surgery. *Id.* at 24 (citing AR at 566-68). The Court noted that in April 2017, Dr. Thomas's records suggested Plaintiff was "still interested in getting shoulder surgery." *Id.* (citing AR at 557). Additionally, it observed that, in September 2016, Dr. Thomas reported that Plaintiff "is deferred surgery on the right shoulder for now." *Id.* at 25 (citing AR at 540).

> Summarizing all of the records relevant to this issue, the Court explained:
>
> Plaintiff elected not to have right shoulder surgery when it was first recommended . . . in 2015. But the record also suggests that Plaintiff later became receptive to the idea of shoulder surgery in 2017. At that time, Dr. Thomas refused, at least initially, to clear Plaintiff for the procedure. Thereafter, Dr. Thomas outlined conditions on which he would approve Plaintiff's shoulder surgery. Plaintiff took steps toward satisfying those conditions . . . and expressed a continued desire to undergo the procedure. It was on September 2017 that Dr. Thomas indicated that Plaintiff was "deferred surgery on the right shoulder for now." AR at 540. Significantly, Dr. Thomas's records do not specify whether Plaintiff *elected* to defer surgery, or whether the surgery was deferred because Dr. Thomas was unwilling to clear Plaintiff for surgery. Both scenarios are possible under the circumstances. Ultimately, no shoulder surgery took place before Plaintiff's date last insured. There is also no express indication that Dr. Thomas cleared Plaintiff for surgery before December 2017. At the same time, there is also evidence suggesting that at the end of the relevant period, in December 2017, Plaintiff's pain in his right shoulder had been alleviated through injections.

*Id.* at 26-27.

In his response in opposition to Plaintiff's motion for EAJA fees, the Commissioner contends that the record "dated January 2, 2017, is not a record from a

visit with Dr. Thomas[,]" as Plaintiff did not establish care with Dr. Thomas until January 18, 2017, and did not begin receiving cortisone shots from him until sometime after January 2017. *Doc. 25* at 8 (citing AR at 536-84). The Commissioner asserts that this record "appears to be a lay witness summary likely generated in mid-2018 as it is contained within an exhibit with patient portal printouts from a June 29, 2018 visit." *Id.* at 9 (citing AR at 668). While it is possible that the January 2, 2017 record was not generated at a medical appointment with Dr. Thomas, the fact remains that it clearly reports that "Dr. Thomas [would] not allow any kind of surgery" because of Plaintiff's poor health. AR at 665. Further, although the Commissioner suggests that the record is inaccurate and produced by a misinformed lay witness, the Court considers it equally possible that the date but not the substance of the record was inaccurate,[1] or that Plaintiff established care with Dr. Thomas prior to January 18, 2017, but earlier records have been omitted from the Administrative Record. *But see* AR at 580 (January 18, 2017 record indicating that Plaintiff "presents for *Establish*, Medication, Diabetes/Hypertension and Mood Disorders") (emphasis added). In any event, the ALJ did not discuss the record dated January 2, 2017, or address any inconsistencies concerning Dr. Thomas's authorization of Plaintiff's right shoulder surgery.

      Nevertheless, as the Court acknowledged in its Memorandum Opinion and Order, the Administrative Record "provide[d] some support for both Plaintiff's position (i.e. that he was unable to have shoulder surgery because Dr. Thomas would not clear him) and for the agency's position (i.e. that Plaintiff *elected* not to have right shoulder

---

[1] As the Court noted in its Memorandum Opinion and Order, Plaintiff's medical records suggests that his A1c levels did not reach 14, the level he testified rendered him ineligible for surgery, until June 21, 2018. *See Doc. 22* at 22 n.6.

surgery)." *Doc. 22* at 26. The Court ultimately concluded that "[b]ecause the ALJ seemingly failed to consider whether there was a justifiable excuse for Plaintiff's failure to undergo shoulder surgery, such as a lack of medical clearance," remand was required for "a meaningful analysis as to the reasons Plaintiff failed to obtain shoulder surgery." *Id.* at 28. Still, the Commissioner contends that "considering the record as a whole, he had a reasonable basis for defending the ALJ's consideration of Plaintiff's right shoulder condition." *Doc. 25* at 8.

Ultimately, the Court agrees with the Commissioner that its conclusion as to his fourth claim "turned on the adequacy of the ALJ's articulation." *Id.* at 11-12. The Court acknowledges that it is sometimes the case that an ALJ's position is "fully justified" but so "poorly explained [that] remand may be the most appropriate vehicle for elucidating that position." *See Hays v. Berryhill*, 694 F. App'x 634, 638 (10th Cir. 2017) (quotation and citation omitted). The Court remanded because the ALJ failed to adequately articulate his consideration of Plaintiff's failure to obtain right shoulder surgery, but it nevertheless finds that the Commissioner has met his burden to show that the government's position was a reasonable one. Given that there was some indication in the record that Plaintiff decided against shoulder surgery because his pain was alleviated through injections, the Court cannot say that the government's position was untenable. As such, the Court will not grant Plaintiff's motion on this issue.

### III.   Conclusion

The Court previously determined that remand was warranted in this case on Plaintiff's second and fourth claims of error. *See Doc. 22*. As discussed above, the government's position as to these claims was erroneous but substantially justified.

13

Thus, the Commissioner has met his burden to demonstrate that Plaintiff is not entitled to EAJA fees. Accordingly, the Court will deny Plaintiff's motion for EAJA fees.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent